

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

State Commission for the Blind
State Office Building
Austin, Texas

Gentlemen:                    Attention: Miss Hazel Beckham

Opinion No. O-2070
Re:  Authority of the State
     Commission for the Blind
     to enter into contract
     entitled "Central Control
     Plan" as proposed by
     United States Office of
     Education, Department of
     the Interior.

          This will acknowledge receipt of your letter
of February 29, 1940, requesting the opinion of this De-
partment upon the question of whether or not the State
Commission for the Blind may enter into a contract with
certain local agencies designated by it in various sec-
tions of the state, pursuant to Federal regulations pro-
mulgated by the United States Office of Education,
Department of the Interior, under Public No. 732 (H. R.
4688), 74th Congress.

          We also acknowledge with appreciation receipt
of copies of House Bill 844, approved April 25, 1931,
creating the State Commission for the Blind, Senate Bill
442, approved June 15, 1939, Appropriations for the State
Commission for the Blind for 1940-41, Public No. 732, ap-
proved June 20, 1936, and the "Central Control Plan".

          A careful examination of Public No. 732, indi-
cates that authority was given to the United States Office
of Education of the Department of the Interior to "Desig-
nate . . . the State Commission for the Blind in each
state . . . to issue licenses to blind persons who are

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

State Commission for the Blind, Page 2

citizens of the United States and at least twenty-one
years of age for the operating of vending stands in Fed-
eral and other buildings in such State for the vending of
newspapers, periodicals, confections, tobacco products,
and such other articles as may be approved for each build-
ing by the custodian thereof, and the State licensing
agent . . ." Pursuant to the authority thereby conferred
on the Office of Education of the Department of Interior,
and according to the terms of the agreement between the
two authorities approved December 14, 1936, the State Com-
mission for the Blind was designated as licensing agency
for the State of Texas for vending stands for blind people
in federal buildings.

We now quote your letter as follows:

"In order to meet the Federal regulation
for controlling stands in Federal buildings,
the State Commission for the Blind was fur-
nished by the Department of the Interior, Of-
fice of Education, what they designate as the
Central Control Plan--Rules and Regulations
for Procedure in the Administration of the Con-
cession Stand Service by the Texas State Com-
mission for the Blind and the Local Vending
Stand Committee, copy of which we enclose for
your consideration. The State Commission for
the Blind respectfully requests your opinion as
to whether or not the State Commission for the
Blind has the authority to enter into a con-
tract such as the attached, headed Central Con-
trol Plan, with a chosen agency in a territory
where vending stands for a blind person might
be established in a Federal Building, this agency
to act as the administrative arm for the State
Commission for the Blind in supervising such
vending stands, in making collections of re-
ceipts and disbursements for such stands, for
furnishing stock for such stands, where the
equipment for such stands would be owned by the
State Commission for the Blind."

The memorandum headed "Central Control Plan" evi-
dences a contract between the State Commission for the Blind
and a chosen local agency for the supervision of vending

stands for the blind established in federal buildings.
This agreement contemplates that the local agency will
finance the original stock, construct and install the ini-
tial equipment, provide working capital, condition present
stands, make collections from such stands, keep an accurate
account of all moneys handled by such stands, perform the
ministerial duty of paying the blind operators and assist-
ants employed in such stand. The main duty of the State
Commission pursuant to authority bestowed upon it by Public
No. 732 and rules and regulations promulgated by the United
States Commissioner of Education, Department of the Interior,
is to determine to whom licenses shall be granted to operate
such stands. Being in close touch with hundreds of needy
blind, it is to serve as a personnel director in the selec-
tion of such blind operators. It will also provide for
initial equipment for new stands. May the State Commission
so contract?

The State Commission for the Blind is a statutory
commission created by the Legislature in 1939 (Acts 1931,
42nd Legislature, p. 122, ch. 80). Sections 2 and 3 of the
Article of its creation (Article 3207a, Vernon's Ann. Civ.
St.) are pertinent to your inquiry and read as follows:

"Sec. 2. The State Commission for the
Blind shall maintain a Bureau of Information,
the object of which shall be to aid the blind
whose training is not otherwise provided for,
in finding employment, in developing home in-
dustries among the blind, and in marketing
their products. The Commission shall in its
discretion furnish materials, tools and books
for the use as a means in rehabilitating such
persons, and it may establish workshops and
salesrooms, and shall have authority to use
any receipts or earnings that accrue from the
operation of industrial schools, salesrooms or
workshops as provided in this Chapter, but de-
tailed statement of receipts or earnings and
expenditures shall be made monthly to the Audi-
tor of the State. Through the employment of
teachers the Commission may give instruction
to adult blind persons in their homes; provided
that it shall not undertake the permanent sup-
port or maintenance of any blind person. The
Commission may also register cases of persons
whose eyesight is seriously defective or who
are likely to become visually handicapped or
blind, and take such measures, in cooperation

324

with other authorities, as it may deem advis-
able for the prevention of blindness or conser-
vation of eyesight, and in appropriate cases,
for the education of children and for the vocation-
al guidance of adults having seriously defective
sight. The Commission may receive gifts, be-
quests, or devises from individuals, associations
or corporations, and may expend them in accordance
with the provisions of this Act." (Underscoring
ours)

"Sec. 3. The State Commission for the
Blind may appoint and fix the compensation of an
executive secretary and such other workers as
may be necessary to make effective the purposes
of this Act within the appropriations provided."

Item 5 under the heading "Maintenance and Miscel-
laneous" provides an appropriation of $1,500.00 to the State
Commission for the Blind for "Operation, Rehabilitation,
and Placement, such as, stand equipment, show cases, looms,
machinery, yarns, threads, etc., for training purposes."

Underlying each of your inquiries are two major
questions, the determination of which must necessarily be
made. The first is, has the State Commission for the Blind
been given authority by the Legislature to enter into a
joint undertaking with a department of the Federal govern-
ment by the terms of which it will act as licensing agency
for the blind operators of stands in federal buildings in
this State? An examination of Article 3207a, Vernon's Anno-
tated Civil Statutes, reveals that the Legislature has con-
ferred broad authority and wide discretion upon the Commis-
sion for the rehabilitation of the blind. Specifically it
has been given authority to (1) aid the blind in finding
employment; (2) establish workshops for the blind; (3) fur-
nish materials for such workshops; (4) use the earnings
accruing from the operation of such workshops; (5) cooperate
with other authorities "for the vocational guidance" of the
blind; (6) receive gifts, bequests and devises and expend
the same for purposes contemplated by the Act. We hold that
under its authority to cooperate with other agencies for the
vocational guidance of the blind and its authority to estab-
lish workshops for the blind, the Commission has authority
to enter into a joint undertaking with the Federal government
by the terms of which it will act as licensing agency for
blind operators of stands in Federal buildings in this State.

State Commission for the Blind, Page 5

A second basic and more specific inquiry is whether or not the State Commission for the Blind--granted that it may cooperate to some extent with the federal government in placing blind operators in stands in federal buildings--may contract with local committees in various sections of the state under the "Central Control Plan". We hold that it may.

While at first blush it might appear that a contract with a local committee in the nature of the "Central Control Plan" would constitute an unconstitutional delegation of legislative authority, we do not believe that such is the case. Of course it is axiomatic that legislative authority once delegated cannot be further delegated by the first recipient of the power. Stated more accurately, acts or functions involving official discretion may not be delegated while purely ministerial acts of an officer or board may be delegated to a subordinate or to another. Is that what has actually occurred here?

We are impressed with the fact and after much thought and study the conclusion is inescapable that no lessening of the official power of the Commission has occurred; on the contrary an increase in its jurisdiction has been the result of its negotiations with the Federal government. Prior to those negotiations, it had no jurisdiction or control whatever over stands for blind people in federal buildings. It received that grant of power (pursuant to its statutory authority to "cooperate with other authorities for the vocational guidance" of the blind) conditioned upon its compliance with the reasonable rules and regulations of the United States Office of Education of the Department of the Interior. One such regulation was that the State Commission comply with what is known as the Central Control Plan. In receiving this conditional grant of authority--manifestly for the purpose of providing additional opportunities for the Commission to aid in the rehabilitation and vocational guidance of the needy blind--we find no violation of constitutional guaranties or usurpation of legislative authority. We hold that the State Commission for the Blind may enter into a contract such as the "Central Control Plan" with a chosen local agency for the supervision of stands for the blind in federal buildings.

Your next inquiry centers upon the question of whether or not the State Commission for the Blind may receive from the local agency "a percentage assessment for the

purpose of taking care of depreciation of equipment fur-
nished for such stands by the State Commission for the
Blind", and also whether or not the State Commission may
receive certain additional funds from local agencies "for
the purpose of building a revolving fund for the expan-
sion of a stand program". These funds are provided for un-
der Articles III-A, "Levy for Equipment and Service Costs",
and Article III-A-4, "Reserve and Stabilization Fund" which
read as follows:

"Art. III.  The _____ Vending Stand Com-
mittee shall collect from each and every stand
under the jurisdiction of the Texas Commission
for the Blind all moneys derived from the sale
of merchandise, and shall apply and account for
the moneys thus collected as follows:

A. Levy for Equipment and Service Costs.
From the moneys collected, the _____
Vending Stand Committee will at the
end of each operating month levy and
collect from the gross amount col-
lected from each stand a sum equaling,
not to exceed, ten per cent of the
gross sales of each stand. (The per-
centage to be levied against any stand
over any given period shall be deter-
mined quarterly in advance through
agreement between the Texas Commission
for the Blind and the _____ Vending
Stand Committee.) The levy for the
first three months' period from the be-
ginning of operation shall be six per
cent, and no additional or extra levies
for equipment and service costs shall
be made during such period. The moneys
derived from the levy for equipment and
service costs shall be apportioned and
applied as follows: . . ."

"Article III-A-4. Reserve and Stabiliza-
tion Fund. After satisfying the re-
quirements for general overhead,
amortization, and interest charges, any
residue from the 'Levy for Equipment and
Service Costs' at the end of each quar-
ter shall be divided equally between the
_____ Vending Stand Committee and

State Commission for the Blind, Page 7

the Texas Commission for the Blind.
The residue according to the _____
Vending Stand Committee shall be
credited to the Reserve and Stabiliza-
tion Fund. The Reserve and Stabiliza-
tion Fund shall be used primarily for
establishing new stands."

The Commission has been given specific statutory
authority to "receive gifts, bequests, or devises from in-
dividuals, associations or corporations, and may expend
them in accordance with the provisions of this act". And
we hold that under that authority it may receive these
moneys from the local vending stand committee. In this
connection, however, we should like to point out that the
agreement entitled "Central Control Plan" does not provide
for the Commission to provide the initial equipment for
the stands nor does it provide for the collection of a per-
centage assessment by the State Commission of the levy
collected by the local agency under Article III-A. We sug-
gest that new agreements be modified to this extent if this
is what is desired to be accomplished.

Your final question is, "what procedure should
the State Commission for the Blind follow in receiving such
funds and in properly recording the same?" We believe that
this is a question which is largely within the administra-
tive discretion of the State Commission for the Blind and
its Executive Secretary-Director to be determined by correct
rules of accounting procedure. The statute (Article 3207a,
Vernon's Annotated Civil Statutes) is silent on the subject
with the exception that it provides that "a detailed state-
ment of receipts or earnings and expenditures shall be made
monthly to the Auditor of the State".

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Walter R. Koch*
Walter R. Koch
Assistant

By *James D. Smullen*
James D. Smullen

APPROVED MAY 9, 1940

*Gerald C. Mann*
ATTORNEY GENERAL OF TEXAS

JDS:ew